UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| ERIC HUFFMAN, | } |
| | } |
| Plaintiff, | } |
| VS. | } CIVIL ACTION NO. H-08-1541 |
| | } |
| CITY OF LAKE JACKSON, | } |
| | } |
| Defendant. | } |

**OPINION & ORDER**

Pending before the Court is Defendant City of Lake Jackson's motion for partial summary judgment on the issue of damages (Doc. 22), along with Plaintiff Eric Huffman's ("Huffman") brief on the issue of damages (Doc. 34), Defendant's response (Doc. 36), and Defendant's brief on the issue of damages (Doc. 37).  Upon review and consideration of this motion, the additional briefs and responses, and the relevant legal authority, the Court finds that Defendant's motion for partial summary judgment on the issue of damages (Doc. 22) should be granted.

I. Background and Relevant Facts

On May 16, 2008, Plaintiff Eric Huffman ("Huffman") filed suit against the City of Lake Jackson ("City") for unpaid wages and overtime pursuant to the Fair Labor Standards Act of 1938 ("FLSA"), as amended, 29 U.S.C. § 201 *et seq.*, and the corresponding sections of the Texas Labor Code.  (Doc. 1, ¶ 1.)  Defendant City filed the instant motion for partial summary judgment on the issue of damages filed on July 30, 2009, arguing that the maximum possible damages of $4,935.57 have already been paid and therefore the Court should dismiss Huffman's claims in their entirety.  (Doc. 22 at 8.)

Plaintiff Huffman was employed as a patrol officer for the City from October 1991 to December 20, 2007. (Doc. 19, Exh. B, Huffman deposition at 17, 47, 126–27, Exh. 22.) During his tenure, Huffman became interested in working as a canine patrol officer. (Id. at 50–54.) Despite past disciplinary issues, including alleged problems with the accuracy of his reports, Police Chief Paul Hromadka ("Hromadka") informally offered him the job. (Id. at 128–34.) Subsequently, Huffman formally applied for the position by letter dated May 25, 2005, stating that, "[a]fter much thought, I wish to accept the challenge and new training opportunities associated with this position." (Doc 19-10, Deposition Exh. 12.) From December 7, 2005, until his resignation effective December 20, 2007, Huffman worked as a canine patrol officer for the City. (Doc. 1, ¶7.) One of his primary duties in this capacity was to care for Rip, the City's drug sniffing canine, which entailed, *inter alia*, "bathing, brushing, exercising, feeding, grooming, cleaning of the dog's kennel, training and administering drugs or medicine for illness." (Id., ¶¶ 8–9.)

Prior to Huffman beginning his service as a canine patrol officer, Huffman and Chief Hromadka discussed the duties and obligations that the job would entail. (Doc. 19, Exh. B, Huffman deposition at 55, 59–77, 78–84.) Huffman understood that the dog could live with him and that he would need to exercise, groom, and feed the dog, as well as see to its training and medical needs, some of which would need to be done at home while off-duty, in exchange for which he would be paid a one hundred dollar monthly stipend and receive four paid hours off per week. (Id. at 61–64.) This agreement prevailed through March 14, 2007, when Huffman and the City signed the MOU formalizing the duties and compensation of the canine handler. In pertinent part, the MOU stated that in addition to the $100 monthly stipend, the City would pay for the dog's medical and food supplies and that the dog's handler would receive four paid hours

off per week for training and maintenance. (Doc. 19-10, Deposition Exh. 17, ¶¶ 1–2, 6.) It is also noteworthy that Huffman was Rip's owner and accordingly he took Rip with him when he resigned as the City's canine patrol officer. (Doc. 19, Exh. B, Huffman deposition at 115.)

Shortly after Huffman tendered his resignation, he complained in a letter dated December 16, 2007, that he had not been properly compensated for housing and maintaining Rip. (Doc 19-11, deposition exh. 36.) Huffman stated that despite bringing Rip home on December 7, 2005, he only began receiving the $100 monthly stipend from the City on March 1, 2006. (Id.) Furthermore, Huffman claimed that under the FLSA, he was entitled "to one hour of overtime pay at a rate of time and one half for daily maintenance of the canine[,]" including weekends and holidays. (Id.) Huffman's tabulation also does not reflect the four paid hours per week (later changed to eight hours fortnightly at his request) of time off for Rip's care. (Id.) In total, Huffman demanded $20,311.47 in back pay for dog maintenance. (Id.)

The City investigated Huffman's claims and Chief Hromadka responded by letter dated January 24, 2008. (Id.) The letter notes that the prior canine officer recalled handing care of Rip to Huffman during the "latter part of January to the first part of February 2006." (Id.) Nevertheless, because the City's records did "not specifically document when [Huffman] officially took possession of . . . Rip, [Huffman's] compensation [was] reviewed as a canine handler beginning on December 7, 2005." (Id.) After analyzing Huffman's time sheets for the period from December 7, 2005 to November 30, 2007, the City determined that its "records reflect 168 hours and 46 minutes as uncompensated time owed to you." (Id.) This resulted in a payment to Huffman of $4,935.57, minus the applicable withholding. (Doc. 19 at 9.)

Huffman sues the City for unpaid wages and overtime pursuant to the FLSA, as well as liquidated damages for the City's willful refusal to pay. (Doc. 1 at 1–3.) The City contends that

after giving Huffman the benefit of every doubt, its payment to him of $4,935.57 represents the maximum legally supportable damages in this case and that therefore the case must now be dismissed.  (Doc. 19 at 9 and doc. 22 at 8.)  The Court previously granted the City's motion for partial summary judgment (Doc. 12) and reserved on the issue of damages (Doc. 22) pending further briefing by the parties.  (*See* Doc. 33.)

II.  Legal Standard for Summary Judgment

A party moving for summary judgment must inform the court of the basis for the motion and identify those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, that show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56; *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986).  The substantive law governing the suit identifies the essential elements of the claims at issue and therefore indicates which facts are material.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  The initial burden falls on the movant to identify areas essential to the nonmovant's claim in which there is an "absence of a genuine issue of material fact."  *Lincoln Gen. Ins. Co. v. Reyna*, 401 F.3d 347, 349 (5th Cir. 2005).  If the moving party fails to meet its initial burden, the motion must be denied, regardless of the adequacy of any response.  *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (*en banc*).  Moreover, if the party moving for summary judgment bears the burden of proof on an issue, either as a plaintiff or as a defendant asserting an affirmative defense, then that party must establish that no dispute of material fact exists regarding all of the essential elements of the claim or defense to warrant judgment in his favor.  *Fontenot v. Upjohn*, 780 F.2d 1190, 1194 (5th Cir. 1986) (the movant with the burden of proof "must establish beyond peradventure *all* of the essential elements of the claim or defense to warrant judgment in his favor") (emphasis in

original).

Once the movant meets its burden, however, the nonmovant must direct the court's attention to evidence in the record sufficient to establish that there is a genuine issue of material fact for trial. *Celotex*, 477 U.S. at 323–24. The nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Electric Indust. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) (citing *U.S. v. Diebold, Inc.*, 369 U.S. 654, 655 (1962)). Instead, the nonmoving party must produce evidence upon which a jury could reasonably base a verdict in its favor. *Anderson*, 477 U.S. at 248; *see also DIRECTV Inc. v. Robson*, 420 F.3d 532, 536 (5th Cir. 2005). To do so, the nonmovant must "go beyond the pleadings and by [its] own affidavits or by depositions, answers to interrogatories and admissions on file, designate specific facts that show there is a genuine issue for trial." W*ebb v. Cardiothoracic Surgery Assoc. of North Texas, P.A.*, 139 F.3d 532, 536 (5th Cir.1998). Unsubstantiated and subjective beliefs and conclusory allegations and opinions of fact are not competent summary judgment evidence. *Morris v. Covan World Wide Moving, Inc.*, 144 F.3d 377, 380 (5th Cir. 1998); *Grimes v. Texas Dept. of Mental Health and Mental Retardation*, 102 F.3d 137, 139–40 (5th Cir. 1996); *Forsyth v. Barr*, 19 F.3d 1527, 1533 (5th Cir. 1994), *cert. denied*, 513 U.S. 871 (1994); *Topalian v. Ehrman*, 954 F.2d 1125, 1131 (5th Cir. 1992), *cert. denied*, 506 U.S. 825 (1992). Nor are pleadings summary judgment evidence. *Wallace v. Tex. Tech Univ.*, 80 F.3d 1042, 1046 (5th Cir. 1996) (citing *Little*, 37 F.3d at 1075). The nonmovant cannot discharge his burden by offering vague allegations and legal conclusions. *Salas v. Carpenter*, 980 F.2d 299, 305 (5th Cir. 1992); *Lujan v. National Wildlife Fed'n*, 497 U.S. 871, 889 (1990). Nor is the court required by Rule 56 to sift through the record in search of evidence to support a party's opposition to summary judgment. *Ragas v. Tennessee Gas Pipeline Co*., 136

F.3d 455, 458 (5th Cir. 1998) (citing *Skotak v. Tenneco Resins, Inc.*, 953 F.2d 909, 915–16 & n.7 (5th Cir. 1992)).

Nevertheless, all reasonable inferences must be drawn in favor of the nonmoving party. *Matsushita*, 475 U.S. at 587–88; *see also Reaves Brokerage Co. v. Sunbelt Fruit & Vegetable Co.*, 336 F.3d 410, 412 (5th Cir. 2003). Furthermore, the party opposing a motion for summary judgment does not need to present additional evidence, but may identify genuine issues of fact extant in the summary judgment evidence produced by the moving party. *Isquith v. Middle South Utilities, Inc.*, 847 F.2d 186, 198–200 (5th Cir. 1988). The nonmoving party may also identify evidentiary documents already in the record that establish specific facts showing the existence of a genuine issue. *Lavespere v. Niagara Mach. & Tool Works, Inc.*, 910 F.2d 167, 178 (5th Cir. 1990).

III. Discussion

The only issue here is that of damages. Huffman's damages in this case cannot exceed the compensation to which he was entitled under the agreement he had with the City. The City has provided the detailed affidavit of Carmen Williams, the Personnel Director of the City of Lake Jackson, showing precisely the overtime hours to which Huffman was entitled and paid. (Doc. 37-3.) In his brief on the issue of damages, Huffman argues solely that he is still entitled to liquidated damages in addition to the $4,935.57 in overtime compensation already paid him by the City. (Doc. 34 at 1.)

This is not a case qualifying for liquidated damages. First, the City has not admitted any violations of the FLSA. Second, the burden was on Huffman to schedule his canine care time with the City. Third, there is no evidence of bad faith on the City's part. Therefore, liquidated damages are not available to Huffman as a matter of law. See 29 U.S.C. §§ 259–260; 29 C.F.R.

§785.23; *Lee v. Coahoma County*, 937 F.2s 220, 227 (5th Cir. 1991); *Brock v. El Paso Natural Gas Co.*, 826 F.2d 369, 374 n.8 (5th Cir. 1987); *Newton v. City of Henderson*, 47 F.3d 746, 748 (5th Cir. 1995) (reversing award of overtime and liquidated damages, where employer had overtime compensation rules that employee knew of but didn't follow).

IV. Conclusion

Accordingly, the Court hereby ORDERS that Defendant City of Lake Jackson's motion for partial summary judgment on the issue of damages (Doc. 22) is GRANTED.

SIGNED at Houston, Texas, this 5th day of March, 2010.

_____
MELINDA HARMON
UNITED STATES DISTRICT JUDGE